IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

VICTIMS OF THE HUNGARIAN )
HOLOCAUST, )
 )
Plaintiffs, )
 )
v. ) No. 10 C 868
 )
HUNGARIAN STATE RAILWAYS, )
 )
Defendant. )

# MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant The Hungarian State Railways' (HSR) motion to dismiss and on Plaintiffs' motion to strike. For the reasons stated below, the motion to dismiss is denied and Plaintiffs' motion to strike is denied as moot.

# BACKGROUND

Plaintiffs brought the instant action against HSR, which is an instrumentality of the Government of Hungary that allegedly played a role in the looting and plundering of Jewish possessions and the expropriation of Jewish funds during the

1

Holocaust. Plaintiffs include in their amended complaint claims based on alleged takings in violation of international law, alleged aiding and abetting genocide, alleged complicity in genocide, alleged violations of customary international law, alleged unlawful conversion, alleged unjust enrichment, and alleged fraudulent misrepresentations. HSR now moves to dismiss the instant action.

**DISCUSSION**

HSR argues that this court lacks subject matter jurisdiction because it is immune to liability under the Foreign Sovereign Immunities Act (FSIA). HSR also argues that judicial review of these claims would interfere with the foreign relations of the United States, that Plaintiffs have failed to allege sufficient facts to state a claim, and that this case should be dismissed based on the doctrine of *forum non conveniens*.

I. Immunity Under FSIA

HSR argues that it is an instrumentality of a foreign state and is immune to liability under FSIA, which generally makes a foreign state (or an agency or instrumentality of a foreign state) "immune from the jurisdiction of the courts of the United States." 28 U.S.C. § 1604. Thus, in order to establish jurisdiction pursuant

to the FSIA expropriation exception, a plaintiff must establish that: "(1) rights in property are in issue; (2) that the property was 'taken'; (3) that the taking was in violation of international law; and (4) that one of the two nexus requirements is satisfied." *Zappia Middle East Const. Co. Ltd. v. Emirate of Abu Dhabi*, 215 F.3d 247, 251 (2nd. Cir. 2000); *see also Cassirer v. Kingdom of Spain*, 616 F.3d 1019, 1022 (9th Cir. 2010)(explaining the "'international takings' or 'expropriation' exception in the FSIA"); *Alperin v. Vatican Bank*, 365 Fed.Appx. 74, 75 (9th Cir. 2010)(explaining the FSIA takings exception). The nexus requirement is met by showing: (1) "that property or any property exchanged for such property is present in the United States in connection with a commercial activity carried on in the United States by the foreign state," or (2) "that property or any property exchanged for such property is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States. . . ." 28 U.S.C. § 1605(a)(3). Plaintiffs have alleged sufficient facts to show, at this juncture, that the takings exception to the FSIA, found at 28 U.S.C. § 1605(a)(3), is applicable to the Plaintiffs' claims against HSR. Plaintiffs have alleged facts showing that rights they possessed in property are at issue. Plaintiffs have also alleged facts that, when accepted as true at the motion to dismiss stage, suggest that Plaintiffs' personal property, contractual rights, and interest in real

property were taken by HSR and that the takings violated international law.  HSR contends that Plaintiffs have not explicitly alleged that it was HSR itself that formally ordered the looting.  However, there are sufficient facts included in the amended complaint to infer such a proposition at the pleadings stage.

Plaintiffs have alleged facts showing that HSR conducts commercial activity in this case sufficient to satisfy the nexus requirement for the takings exception.  HSR has filed a declaration regarding its lack of business activity in the United States and has pointed to facts in what it deemed to be the "historical record," contradicting facts alleged in the amended complaint.  (Szarvas Decl.).  However, the motion to dismiss stage is not the proper juncture to resolve disputed facts.

HSR also argues that if a foreign sovereign deprives property from its own nationals that the taking does not violate international law.  However, HSR has not shown that looting in the form of aiding and abetting genocide would not violate international law, regardless of whether the victims are nationals of the foreign sovereign responsible for the looting.  HSR also argues that it should only be held liable to the extent that a private corporation could be held liable and private corporations are not liable for violations of international law.  However, as this court previously ruled in case number 10 C 1884, a corporation can be liable under the Alien Tort Statute.  *Holocaust Victims of Bank Theft v. Magyar Nemzeti Bank*, 2011

WL 1900340, at *2 (N.D. Ill. 2011). Therefore, the motion to dismiss based on FSIA immunity is denied. This court is not adjudicating HSR's defense of sovereign immunity under FSIA on the merits. This court is denying the motion to dismiss because the FSIA issue is not ripe for adjudication at the motion to dismiss stage. Plaintiffs have presented sufficient allegations at the pleadings stage to proceed further in this action at this juncture.

II. Foreign Relations

HSR also argues that judicial review of these claims would interfere with the foreign relations of the United States, arguing that this case presents a non-justiciable political question, that a 1947 peace treaty is not self-executing, and that the claims in this action are barred by the act of state doctrine.

    A. Non-Justiciable Political Question

HSR argues that this case presents non-justiciable political questions and that this case should be dismissed under the political question doctrine. The court should dismiss an action under the political question doctrine

> when any one of the following circumstances is present: a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it; or the impossibility of deciding without an initial policy

5

> determination of a kind clearly for nonjudicial discretion; or the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or an unusual need for unquestioning adherence to a political decision already made; or the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

*I.N.S. v. Chadha*, 462 U.S. 919, 941 (1983)(citing *Baker v. Carr,* 369 U.S. 186, 217, (1962))(internal quotations omitted). HSR argues that the United States government and Hungary have decided to resolve, on a state-to-state basis, Holocaust-related looting pursuant to The Treaty of Paris signed in 1947 (Peace Treaty). However, Plaintiffs contend that the Peace Treaty was terminated because Hungary did not comply with its obligations to make reparations. HSR in fact admits that Hungary's compliance with the Peace Treaty was challenged by the Hungarian courts and that the courts found that Hungary had not discharged its obligations under the Peace Treaty. (Mem. Dis. 8). It is premature to address at this juncture whether the Peace Treaty may limit certain Plaintiffs' claims since the applicability of the Peace Treaty to individual Plaintiffs' claims raises factual issues not properly adjudicated at the motion to dismiss stage of the proceedings. At the summary judgment stage of the proceedings, if warranted, HSR may re-raise the issue relating to the applicability of the Peace Treaty to Plaintiffs' claims. Therefore, based on the above, the court declines to dismiss the instant action based on the political question doctrine at this

juncture.

B. Self-Executing Treaty

HSR argues that the Peace Treaty is not self-executing and therefore fails to provide a private cause of action for Plaintiffs. Regardless of whether the Peace Treaty is self-executing, Plaintiffs have based their claims upon a violation of the historical norms established by the Peace Treaty, customary international law, and the limited area of law governing areas such as genocide. *See, e.g., Sosa v. Alvarez-Machain*, 542 U.S. 692, 725, 762 (2004); *Kadic v. Karadzic*, 70 F.3d 232, 238-41 (2nd Cir. 1995)(indicating that genocide is a violation of a universal norm of international law). Thus, the Peace Treaty need not be self-executing for Plaintiffs to have a private cause of action in this case.

C. Act of State Doctrine

HSR argues that this action is barred by the act of state doctrine, which "requires American courts to presume the validity of an official act of a foreign sovereign performed within its own territory." *Republic of Austria v. Altmann*, 541 U.S. 677, 713-14 (2004)(internal quotations omitted)(citations omitted); *see also Agudas Chasidei Chabad of U.S. v. Russian Federation*, 528 F.3d 934, 951 (D.C.

7

Cir. 2008)(citing *Banco Nacional de Cuba v. Sabbatino,* 376 U.S. 398, 428 (1964)). In considering the applicability of the act of state doctrine, the court looks at several factors, including the "degree of codification or consensus concerning a particular area of international law" and whether "the government which perpetrated the challenged act of state" is still in existence. *Banco Nacional de Cuba*, 376 U.S. at 427-28; *see also Restatement (Third) of Foreign Relations Law of the United States*, Sect. 443 Comment (d) (1987)(stating that the act of state doctrine would not likely bar claims by victims of genocide, "since the accepted international law of human rights is well established and contemplates external scrutiny of such acts"). HSR has the burden to show that the act of state doctrine should be applied in this case. *Chabad*, 528 F.3d at 951. HSR has not met its burden at this juncture. Determining whether the act of state doctrine applies in this case raises factual issues that cannot be resolved at the pleadings stage. In addition, the act of state doctrine is properly characterized as a defense and thus is not properly addressed at the pleadings stage since a plaintiff need not plead allegations in anticipation of avoiding defenses. At the summary judgment stage of the proceedings, if warranted, HSR may re-raise the argument that the act of state doctrine bars the Plaintiffs' claims against HSR.

III. Sufficiency of Facts

HSR argues that Plaintiffs' claims against them must be dismissed for failure to state a claim, contending that Plaintiffs failed to allege sufficient facts in the amended complaint. To defeat a Federal Rule of Civil Procedure Rule 12(b)(6) (Rule 12(b)(6)) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)(internal quotations omitted)(quoting in part *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). HSR argues that the allegations are incomplete. However, Plaintiffs are not required to allege an exhaustive set of all available facts. In this case, Plaintiffs have presented sufficient facts to plausibly suggest a claim for relief in accordance with *Iqbal*. HSR also argues that the facts alleged in the complaint are contradicted by what HSR refers to as the "historical record," that "there is no historical basis for" the allegations in this case, and that there is "not a shred of historical data" to support the claims in this case. (Mem. Dis. 1, 27- 28). HSR also flatly denies that the systematic looting at issue involved HSR. (Mem. Dis. 3). However, it is not proper for HSR to dispute the allegations included in the amended complaint at this juncture. In ruling on a motion to dismiss brought pursuant to Rule 12(b)(6), a court must "accept as true all of the allegations contained in a complaint" and make reasonable inferences in favor of the plaintiff. *Iqbal*, 129 S.Ct. at 1949 (stating that the tenet is "inapplicable to

legal conclusions"); *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). Nor is it appropriate to require a plaintiff to provide evidence at the pleadings stage to support his claims. At the summary judgment stage of the proceedings, if warranted, HSR may re-raise arguments related to what HSR deems to be the historical record. Thus, Plaintiffs have pled sufficient facts to state valid claims for relief. HSR also argues that the court can take judicial notice of its version of the facts, but HSR has not shown its facts to be accepted without dispute such that judicial notice would be appropriate. HSR also contends that there are not sufficient allegations relating to a potential class. However, Plaintiffs have not yet moved to certify a class and a decision has not been made as to class certification. Thus such arguments are premature at this juncture.

IV. Doctrine of *Forum Non Conveniens*

HSR argues that this action should be dismissed based on the doctrine of *forum non conveniens*, arguing that the Hungarian courts provide an available and adequate alternative forum. Under the principle of *forum non conveniens*, "a trial court may dismiss a suit over which it would normally have jurisdiction if it best serves the convenience of the parties and the ends of justice." *Kamel v. Hill-Rom Co., Inc.*, 108 F.3d 799, 802 (7th Cir. 1997); *see also Abad v. Bayer Corp.*, 563 F.3d

663, 665 (7th Cir. 2009); *Stroitelstvo Bulgaria Ltd. v. Bulgarian-American Enterprise Fund*, 589 F.3d 417, 421 (7th Cir. 2009). A determination of whether to dismiss an action based on *forum non conveniens* "is consigned to the trial court's sound discretion." *Kamel*, 108 F.3d at 802.

Even if the Hungarian courts provide an available and adequate alternative forum, Defendants have not shown that the convenience of the parties, nor the interests of justice would be best served by a dismissal of the instant action. The potential inconvenience to the corporate Defendants in litigating here would be minimal compared to the potential inconvenience to Plaintiffs if required to prosecute this action in the Hungarian courts. In addition, the record indicates that the pertinent evidence is dispersed, that many eyewitnesses are deceased, and that those who are living are dispersed. Further, a plaintiff's choice of forum is accorded deference. In general, "a plaintiff's choice of forum should rarely be disturbed" because "[w]hen the home forum has been chosen, it is reasonable to assume that this choice is convenient." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981); *ISI Intern., Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 553 (7th Cir. 2001)(quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947), for the proposition that, "[u]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed")(internal quotations omitted); *Kamel*, 108 F.3d

at 803 (stating that "[o]rdinarily, the trial court should not supplant the plaintiff's choice of forum"). The Seventh Circuit has indicated that "a foreign plaintiff's choice of forum deserves less deference," *Kamel*, 108 F.3d at 803, but in the instant action, a substantial number of Plaintiffs are in the United States, and those United States Plaintiffs' choice of forum should be accorded deference. There is also a local interest factor in regard to protecting the rights of such Plaintiffs in the United States and a strong U.S. interest in vindicating alleged international human rights violations such as genocide. Defendants have not shown that the instant forum is inappropriate nor that the interests of justice and the convenience of the parties would not be served by a resolution of this case in this forum. HSR argues that this case may require the court to resolve issues of Hungarian law, but HSR has not shown at this juncture that Hungarian law will be applicable in this case. Plaintiffs indicate that they will not need to call upon Hungarian law to prosecute their claims in this case. Therefore, based on all of the above, a dismissal under the doctrine of *forum non conveniens* is not warranted.

V. Exhaustion of Remedies in Hungarian Courts

HSR also argues that Plaintiffs must exhaust their remedies in the Hungarian courts before bringing the instant action. However, HSR points to no controlling

precedent that would require Plaintiffs to exhaust remedies in a foreign court prior to bringing claims such as in the instant action relating to genocide based on alleged violations of customary international law.  Nor does the FSIA contain any explicit exhaustion requirement.  In addition, exhaustion is a defense that is not properly dealt with at the pleadings stage since a plaintiff is not required to plead allegations in anticipation of avoiding a defense.  Thus, HSR has not shown that Plaintiffs are required to exhaust remedies in Hungarian courts before pursuing the instant action.  Based on the above, HSR's motion to dismiss is denied.

VI.  Motion to Strike

Plaintiffs move to strike certain documents filed by HSR.  Plaintiffs argue that such materials are outside of the pleadings and should not be considered by the court for the purposes of ruling on the instant motion to dismiss to the extent that HSR moves to dismiss this action under Rule 12(b)(6).  Plaintiffs also contend that such materials outside of the pleadings were improperly introduced by HSR in an attempt to contradict the facts properly alleged in the amended complaint.  As indicated above, the court has recognized that HSR cannot introduce evidence at this juncture to attempt to contradict the allegations in the amended complaint.  The court has not considered any materials introduced by HSR that cannot be properly considered in

ruling on a Rule 12(b)(6) motion to dismiss. Therefore, Plaintiffs' motion to strike is denied as moot.

## CONCLUSION

Based on the foregoing analysis, HSR's motion to dismiss is denied and Plaintiffs' motion to strike is denied as moot.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: July 8, 2011